# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN (WATERLOO) DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br>         Plaintiff, <br> vs. <br><br> TORION BYRD, <br>         Defendant. | Case No. 24-cr-2016-LTS-MAR <br><br> **REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO DISMISS INDICTMENT** |

## I. INTRODUCTION

On May 9, 2024, the Grand Jury charged Defendant with one count of Possession of a Firearm by a felon in violation of 18 U.S.C. Sections 922(g)(1) and 924(a)(8). (Doc. 22.) Specifically, the indictment charges Defendant, knowing he had previously been convicted of a crime punishable by a term exceeding one year, knowingly possessed a firearm that was in and affecting commerce. (*Id.*)

The matter before the Court is Defendant's Motion to Dismiss. (Doc. 32.) Defendant contends Section 922(g)(1) is unconstitutional facially and as applied to his conduct. The Government timely filed a resistance. (Doc. 33.) The Honorable Leonard T. Strand, United States District Court Judge, referred the motion to me for a Report and Recommendation. For the following reasons, I respectfully recommend that the District Court **deny** Defendant's Motion to Dismiss.

## II. DISCUSSION

The Second Amendment to the United States Constitution provides "[a] well regulated Militia, being necessary to the security of a free [s]tate, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. Title 18, United States Code, Section 922(g)(1) provides "[i]t shall be unlawful for any person . . . who

1

has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to . . . possess in or affecting commerce, any firearm or ammunition[.]" In *New York State Rifle & Pistol Association, Inc. v. Bruen*, the United States Supreme Court explained that "[w]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." 597 U.S. 1, 24 (2022). The question here is whether Section 922(g)(1) unconstitutionally infringes upon Defendant's right to keep and bear arms guaranteed to persons under the Second Amendment.

A.    *The Parties' Arguments*

Defendant argues alternatively that 18 U.S.C. Section 922(g)(1) is facially unconstitutional or is unconstitutional as applied[1] to him under *Bruen*. (Doc. 32-1 at 8.) Defendant first asserts that his conduct, possessing a firearm, is protected because he is part of "the people" as that term is used in the Second Amendment, regardless of his use of controlled substances. (*Id.* at 3-5.)

Defendant next asserts the Government cannot meet its burden under *Bruen* to show Section 922(g)(1)'s prohibition against possession of firearms by felons is consistent with this "Nation's historical tradition of firearm regulation." (*Id.* at 5) (citing *Bruen*, 597 U.S. at 33-34.)

Defendant first points to *United States v. Jackson*, 69 F.4th 495, 502 (8th Cir. 2023) and argues that the historical statutes cited as a basis to disarm certain ethnic or religious groups should not be used to broadly limit the rights of felons because, inter alia, these archaic laws would be found unconstitutional under the Fourteenth Amendment. (Doc. 32-1 at 6.) Defendant notes that, although in early American history

---

[1] Defendant makes only a passing reference to his as-applied challenge and does not attempt to explain why he is differently situated than other felons.

crimes existed for which a sentence in excess of one year might be imposed, the founders did not create any general prohibition against carrying firearms by those convicted of such crimes. (*Id.* at 7.)

Defendant acknowledges *United States v. Rahimi* which stated, "[a]n individual found by a court to pose a credible threat to the physical safety of another may be temporarily disarmed consistent with the Second Amendment." 144 S.Ct. 1889, 1903 (2024). Defendant distinguishes *Rahimi* by focusing on the temporary nature of the prohibition imposed on a person who poses an immediate credible threat, as opposed to a "lifelong bar on a person possessing a firearm." (Doc. 32-1 at 7.) Defendant suggests that, unlike the defendant in *Rahimi*, a person merely categorized as a felon cannot be shown to present the sort of danger that supports deprivation of his right to possess a firearm.

Next, Defendant argues that Section 922(g)(1) is unconstitutional because Congress does not have the power to forbid the possession of firearms. (*Id.* at 8.) Defendant argues there is no enumerated power in the Constitution permitting Congress to do so. Moreover, Defendant asserts that the many circuit courts that have held the commerce clause provides the power to regulate firearms under Section 922(g) are wrong. (*Id.*) Defendant relies principally on *United States v. Lopez* which held the Gun-Free Schools Act of 1990's prohibition against possession of firearms in school zones to be unconstitutional. 514 U.S. 549 (1995). Specifically, *Lopez* stated that:

> possession of a gun in a local school zone is in no sense an economic activity that might, through repetition elsewhere, substantially affect any sort of interstate commerce. Respondent was a local student at a local school; there is no indication that he had recently moved in interstate commerce, and there is no requirement that his possession of the firearm have any concrete tie to interstate commerce.

3

514 U.S. at 567. Defendant argues that *Lopez* cannot be reconciled with *Scarborough v. United States*, 431 U.S. 563 (1977), which upheld a federal conviction for firearm possession by a felon. Thus, Defendant takes issue with the sufficiency of the "jurisdictional hook," arguing that the commerce clause does not permit Congress to exercise its police power as it does in Section 922(g)(1) merely because a product was manufactured and transported in interstate commerce. (Doc. 32-1 at 9.)

The Government asserts that Section 922(g) does not violate the Second Amendment. First, the Government argues that *Rahimi* does not cast doubt on the conclusions of *United States v. Jackson*, 69 F.4th 495 (8th Cir. 2023) and *United States v. Cunningham*, 70 F.4th 502 (8th Cir. 2023) that no felony-by-felony determination is required. The Government acknowledges that *Jackson* and *Cunningham* have been vacated by the Supreme Court for reconsideration by the Eighth Circuit in light of *Rahimi*. However, the Government asserts that these decisions are founded on a premise unaltered by *Rahimi*:

> The Eighth Circuit Court of Appeal's decisions rested on the premise that legislatures may disarm "categories of persons based on a conclusion that the category as a whole pre-sent[s] an unacceptable risk of danger if armed." *Jackson*, 69 F.4th [at] 504. *Rahimi* expressly reserved the question whether that premise is correct. *Rahimi*, 2024 WL 3074728, [at] *9.

(Doc. 33 at 3 n.1.)

The Government further asserts that convicted felons are not law-abiding citizens and, therefore, outside the scope of the protection afforded by the text of the Second Amendment. The Government also asserts that the prohibition on felons possessing firearms "comfortably fits a longstanding historical tradition of disarming groups considered dangerous or unvirtuous." (*Id.* at 3.)

4

The Government notes *Bruen's* cautionary statement that its holding should not cast doubt on "longstanding prohibitions on the possession of firearms by felons" and others. *Bruen*, 142 S.Ct. at 81 (Kavanaugh, J., concurring). After discussing the test established by *Bruen*, the Government concludes that Section 922(g)(1) should be found constitutional. (Doc. 33 at 6.)

Regarding Defendants commerce clause argument, the Government relies on multiple Eighth Circuit decisions that have upheld 18 U.S.C. §§ 922(g)(1) and 842(i) under Commerce Clause challenges: *United States v. Joos*, 638 F.3d 581, 586 (8th Cir. 2011) ("[I]t is well settled that Congress did not . . . exceed its authority under the Commerce Clause when enacting § 842(i) and § 922(g)"); *United States v. Hill*, 386 F.3d 855, 859 (8th Cir.2004) (upholding § 922(g) against Commerce Clause challenge); *United States v. Folen*, 84 F.3d 1103, 1104 (8th Cir.1996) (upholding § 842(i) against Commerce Clause challenge).

## B. Analysis of the facial challenge

First, *Bruen* requires the Court to address whether Section 922(g)(1) regulates conduct protected by the Second Amendment. Section 922(g)(1) criminalizes possession of a firearm, which is conduct expressly protected by the Second Amendment. As this Court has previously noted,

> [t]he text of the Second Amendment does not qualify who may possess firearms, but rather uses the word "people." Thus, as a textual matter, the plain reading of the Second Amendment covers defendant who is a person under the Constitution. *See United States v. Perez-Gallan*, 22-CR-00427-DC, 2022 WL 16858516, at *8-9 (W.D. Tex. Nov. 10, 2022) (finding the Second Amendment applies to members of the political community and is not limited to law-abiding citizens).

*United States v. Springer*, No. 23-CR-1013-CJW-MAR, 2023 WL 4981583, at *2 (N.D. Iowa Aug. 3, 2023). Thus, I recommend the Court reject the Government's contention

5

that the plain text of the Second Amendment is inapplicable to Defendant's conduct in possessing a firearm as a felon.

Second, I agree with the position this district has taken with respect to the historical antecedents of the regulation. In *United States v. Pruden*, No. 23-CR-42-CJW-MAR, 2023 WL 6628606 (N.D. Iowa Oct. 11, 2023), now Chief Judge Williams determined that:

> Section 922(g)(1) is facially constitutional. In *United States v. Jackson*, the Eighth Circuit Court of Appeals found Section 922(g)(1), prohibiting convicted felons from the possession of firearms, is constitutional as-applied to Jackson—a "nonviolent" drug felon. 69 F.4th 495, 505-06 (8th Cir. 2023). Reviewing historical analogues relating to restrictions on gun possession, the court found that the law is consistent with the Nation's historical tradition of firearms regulation. *Id.* at 501-06. Further, in *Faust*, this Court found Section 922(g)(1) facially constitutional based on *Jackson*, and it adopts its analysis and findings here.

*Id.* at *5. In *United States v. Faust*, No. 23-cr-2005-LTS-MAR, 2023 WL 4669028, at *2-4 (N.D. Iowa June 30, 2023), *adopted by United States v. Faust*, No. CR23-2005-LTS-MAR, 2023 WL 4626672 (N.D. Iowa July 19, 2023), I observed that:

> *Jackson* implicitly precludes any facial challenge to Section 922(g)(1) under *Bruen*. *Jackson* does not explain how "the firearm regulation at issue governs conduct that falls within the plain text of the Second Amendment," but it does review the history supporting the limitations on the right to bear arms as required by *Bruen*. *Jackson* concluded that Congress acted in the "historical tradition" when it prohibited possession of firearms by any felon "[w]hether those actions are best characterized as restrictions on persons who deviated from legal norms or persons who presented an unacceptable risk of dangerousness." 2023 WL 3769242, at *7. Given *Jackson's* broad support for legislative prohibitions against all felons, it is difficult to see how any facial challenge to the constitutionality of Section 922(g) is viable.

*Id.* at *4. In *United States v. Brooks*, No. CR23-53-LTS-MAR, 2023 WL 7706554 (N.D. Iowa Nov. 15, 2023), Judge Strand reasoned that:

6

> In *Jackson*, the court concluded that § 922(g)(1) is constitutional as applied to Jackson "and other convicted felons" because the law "is consistent with the Nation's historical tradition of firearm regulation." *Jackson*, 69 F.4th at 502. It based this conclusion on an analysis that "legislatures traditionally employed status-based restrictions to disqualify categories of persons from possessing firearms." *Id*. at 505. It stated: "Whether those actions are best characterized as restrictions on persons who deviated from legal norms or persons who presented an unacceptable risk of dangerousness, Congress acted within the historical tradition when it enacted § 922(g)(1) and the prohibition on possession of firearms by felons." *Id*. at 505. It also found this conclusion to be consistent with the Supreme Court's assurances that recent decisions on the Second Amendment cast no doubt on the constitutionality of laws prohibiting the possession of firearms by felons. *Id*. at 505-06. Based on these assurances, and the history that supports them, the Eighth Circuit concluded "there is no need for felony-by-felony litigation regarding the constitutionality of § 922(g)(1)." *Id*. at 502. . . .
>
> Because the Eighth Circuit has decided this issue, I am bound to follow that precedent. *See Hood v. United States*, 342 F.3d 861, 864 (8th Cir. 2003) (district courts are "bound … to apply the precedent of [the Eighth] Circuit."). While *Jackson* involved an as-applied challenge and this objection concerns a facial challenge, I am not convinced that the Eighth Circuit's reasoning would be any different given that it found § 922(g)(1) was constitutional as applied to Jackson "and other convicted felons" and stated there "is no need for felony-by-felony litigation regarding the constitutionality of § 922(g)(1)." *Jackson*, 69 F.4th at 502.

*Id*. at *4-*5; *see also United States v. Hoeft*, 103 F.4th 1357, 1361 (8th Cir. 2024) (finding § 922(g)(1) constitutional against a facial challenge to the statute) (citing *Jackson*, 69 F.4th at 502).

In its brief, the Government acknowledges that post-*Rahimi*, *Jackson* was vacated by the Supreme Court and remanded for further consideration in light of *Rahimi*. (Doc. 33-1 at 3, n.1.) The Government asserts that "nothing in the *Rahimi* decision indicates the Eighth Circuit Court of Appeals will reach a different decision in either case upon remand." (*Id*.) The Government is correct.

7

On August 8, 2024, the Eighth Circuit issued its opinion on remand in *Jackson* and determined that "*Rahimi* does not change our conclusion in this appeal[.]" *United States v. Jackson*, ___ F.4th ___, No. 22-2870, 2024 WL 3711155, at *1 (8th Cir. Aug. 8, 2024). The Eighth Circuit explained that:

> § 922(g)(1) is not unconstitutional as applied to Jackson based on his particular felony convictions. The Supreme Court has said that nothing in *District of Columbia v. Heller*, 554 U.S. 570, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008), which recognized an individual right to keep and bear arms, "should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons." *Id.* at 626, 128 S.Ct. 2783; *see McDonald v. City of Chicago*, 561 U.S. 742, 786, 130 S.Ct. 3020, 177 L.Ed.2d 894 (2010) (plurality opinion) ("We repeat those assurances here."). The decision in *Bruen*, which reaffirmed that the right is "subject to certain reasonable, well-defined restrictions," 597 U.S. at 70, 142 S.Ct. 2111, did not disturb those statements or cast doubt on the prohibitions. *See id.* at 72, 142 S.Ct. 2111 (Alito, J., concurring); *id.* at 81, 142 S.Ct. 2111 (Kavanaugh, J., concurring, joined by Roberts, C.J.); *id.* at 129, 142 S.Ct. 2111 (Breyer, J., dissenting, joined by Sotomayor and Kagan, JJ.). Neither did the decision in *Rahimi*. See 144 S. Ct. at 1901-02. Given these assurances by the Supreme Court, and the history that supports them, we conclude that there is no need for felony-by-felony litigation regarding the constitutionality of § 922(g)(1).
>
> When the Second Amendment's text covers an individual's conduct, the government must justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. *Bruen*, 597 U.S. at 24, 142 S.Ct. 2111. History shows that the right to keep and bear arms was subject to restrictions that included prohibitions on possession by certain groups of people. There appear to be two schools of thought on the basis for these regulations. One view is that legislatures have longstanding authority and discretion to disarm citizens who are not law-abiding and are unwilling to obey the law. Jackson contends that a legislature's traditional authority is narrower and limited to prohibiting possession of firearms by those who are deemed more dangerous than a typical law-abiding citizen. While the better interpretation of the history may be debatable, we conclude that either reading supports the constitutionality of § 922(g)(1) as applied to Jackson and other convicted felons, because the law "is consistent with

8

the Nation's historical tradition of firearm regulation." *Id.* at 24, 142 S.Ct. 2111. . . .

Th[e] historical record suggests that legislatures traditionally possessed discretion to disqualify categories of people from possessing firearms to address a danger of misuse by those who deviated from legal norms, not merely to address a person's demonstrated propensity for violence. This conclusion is bolstered by the Supreme Court's repeated statements in *Bruen* that the Second Amendment protects the right of a "law-abiding citizen" to keep and bear arms. *See* 597 U.S. at 8, 15, 26, 29-31, 33 n.8, 38, 60, 70, 142 S.Ct. 2111. As stated by the D.C. Circuit, "it is difficult to conclude that the public, in 1791, would have understood someone facing death and estate forfeiture to be within the scope of those entitled to possess arms." *Medina v. Whitaker*, 913 F.3d 152, 158 (D.C. Cir. 2019); *cf. Rahimi*, 144 S. Ct. at 1902 ("[I]f imprisonment was permissible to respond to the use of guns to threaten the physical safety of others, then the lesser restriction of temporary disarmament that Section 922(g)(8) imposes is also permissible.").

On this view, for which there is considerable support in the historical record, Congress did not violate Jackson's rights by enacting § 922(g)(1). He is not a law-abiding citizen, and history supports the authority of Congress to prohibit possession of firearms by persons who have demonstrated disrespect for legal norms of society. *See also United States v. Bena*, 664 F.3d 1180, 1183-84 (8th Cir. 2011); *United States v. Adams*, 914 F.3d 602, 610-11 (8th Cir. 2019) (Kelly, J., concurring in the judgment).

If the historical regulation of firearms possession is viewed instead as an effort to address a risk of dangerousness, then the prohibition on possession by convicted felons still passes muster under historical analysis. Legislatures historically prohibited possession by categories of persons based on a conclusion that the category as a whole presented an unacceptable risk of danger if armed. This history demonstrates that there is no requirement for an individualized determination of dangerousness as to each person in a class of prohibited persons. Not all persons disarmed under historical precedents—not all Protestants or Catholics in England, not all Native Americans, not all Catholics in Maryland, not all early

9

Americans who declined to swear an oath of loyalty—were violent or dangerous persons. . . .

The Supreme Court in *Heller* cited this prohibition on the possession of firearms by felons as one of several "presumptively lawful regulatory measures." 554 U.S. at 627 n.26, 128 S.Ct. 2783. Some have taken the phrase "presumptively lawful" to mean that the Court was suggesting a presumption of constitutionality that could be rebutted on a case-by-case basis. That is an unlikely reading, for it would serve to cast doubt on the constitutionality of these regulations in a range of cases despite the Court's simultaneous statement that "nothing in [its] opinion should be taken to cast doubt" on the regulations. *Id*. at 626, 128 S.Ct. 2783. We think it more likely that the Court presumed that the regulations are constitutional because they are constitutional, but termed the conclusion presumptive because the specific regulations were not at issue in *Heller*.

The Court in *Rahimi* did "not suggest that the Second Amendment prohibits the enactment of laws banning the possession of guns by categories of persons thought by a legislature to present a special danger of misuse." 144 S. Ct. at 1901 (citing *Heller*, 554 U.S. at 626, 128 S.Ct. 2783). In fact, the Court referred back to its statement in *Heller* that prohibitions on the possession of firearms by felons are presumptively lawful. *Id*. at 1902. . . .

In sum, we conclude that legislatures traditionally employed status-based restrictions to disqualify categories of persons from possessing firearms. Whether those actions are best characterized as restrictions on persons who deviated from legal norms or persons who presented an unacceptable risk of dangerousness, Congress acted within the historical tradition when it enacted § 922(g)(1) and the prohibition on possession of firearms by felons. Consistent with the Supreme Court's assurances that recent decisions on the Second Amendment cast no doubt on the constitutionality of laws prohibiting the possession of firearms by felons, we conclude that the statute is constitutional as applied to Jackson.

*Id*. at *4-*7.

Thus, I would decide the facial challenge to Section 922(g)(1) consistent with the Eighth Circuit and this district and deny Defendant's motion to dismiss.

10

## C. Analysis of the as-applied challenge

Defendant's as-applied challenge is also foreclosed by *Jackson*. The Eighth Circuit found that "§ 922(g)(1) is not unconstitutional as applied to Jackson based on his particular felony convictions," which were "non-violent" drug offenses. 2024 WL 3711155, at *4. After reviewing historical analogues regarding restrictions on firearm possession, the Eighth Circuit determined that "Congress did not violate Jackson's rights by enacting § 922(g)(1). He is not a law-abiding citizen, and history supports the authority of Congress to prohibit possession of firearms by persons who have demonstrated disrespect for legal norms of society." *Id*. at *5-*7 (citing *United States v. Bena*, 664 F.3d 1180, 1183-84 (8th Cir. 2011); *United States v. Adams*, 914 F.3d 602, 610-11 (8th Cir. 2019) (Kelly, J., concurring in the judgment)). Further, the Eighth Circuit concluded that:

> legislatures traditionally employed status-based restrictions to disqualify categories of persons from possessing firearms. Whether those actions are best characterized as restrictions on persons who deviated from legal norms or persons who presented an unacceptable risk of dangerousness, Congress acted within the historical tradition when it enacted § 922(g)(1) and the prohibition on possession of firearms by felons. Consistent with the Supreme Court's assurances that recent decisions on the Second Amendment cast no doubt on the constitutionality of laws prohibiting the possession of firearms by felons, we conclude that the statute is constitutional as applied to Jackson.

*Id*. at *7. Here, Defendant was convicted of violent crimes, as opposed to non-violent drug crimes in *Jackson*, First Degree Burglary and First Degree Robbery, on December 8, 2016 in the Iowa District Court for Black Hawk County, both crimes punishable by imprisonment for a term exceeding one year. (Doc. 22; Doc. 32-1 at 2.) "As such, the Eighth Circuit's analysis, reasoning, and holding apply here to the same effect as in *Jackson*." *Pruden*, 2023 WL 6628606, at *7; *see also United States v. Cunningham*, 70 F.4th 502, 506 (8th Cir. 2023) ("This contention is foreclosed by *United States v.*

11

*Jackson*, No. 22-2870, 69 F.4th 495, 501–02 (8th Cir. June 2, 2023), where we concluded that there is no need for felony-by-felony determinations regarding the constitutionality of § 922(g)(1) as applied to a particular defendant."). Thus, I recommend that for the same reasoning articulated by the Eighth Circuit, the Court find § 922(g)(1) not unconstitutional as-applied to Defendant.

### D. *Analysis of the Commerce Clause challenge*

Defendant's Commerce Clause argument is foreclosed by Eighth Circuit precedent. "[I]t is well settled that Congress did not . . . exceed its authority under the Commerce Clause when enacting . . . § 922(g)[.]" *United States v. Joos*, 638 F.3d 581, 586 (8th Cir. 2011); *see also United States v. Hill*, 386 F.3d 855, 859 (8th Cir. 2004) ("We [have] held that § 922(g)(1) is a permissible extension of congressional authority pursuant to the Commerce Clause" and "the enactment of § 922(g)(1) was not beyond the scope of congressional authority.") (Citation omitted).

Defendant's Commerce Clause challenge based on *Lopez* is also of no avail, as the Eighth Circuit has addressed this argument directly in many cases, most recently in *United States v. Stuckey*, 255 F.3d 528 (8th Cir. 2001). In *Stuckey*, the Eighth Circuit stated, "[b]ecause § 922(g)(1) contains an express jurisdictional element that satisfies the Commerce Clause, a long line of post-*Lopez* Eighth Circuit decisions have rejected claims that the statute is unconstitutional." *Id*. at 529; *see also United States v. Bates*, 77 F.3d 1101, 1104 (8th Cir. 1996) ("To satisfy the interstate commerce element of section 922(g), it is sufficient that there exists the minimal nexus that the firearm[s] have been, at some time, in interstate commerce") (quotation omitted); *United States v. Shelton*, 66 F.3d 991, 992 (8th Cir. 1995) (per curiam) ("[S]ection 922(g) contains an interstate commerce element—that the firearms in question must have been shipped, transported, or possessed "in or affecting" interstate commerce—which in turn ensure[s], through

case-by-case inquiry, that the firearm possession in question affects interstate commerce") (second alteration in original) (quotation omitted).

Here, in the Indictment, the Government alleges that the firearm found in Defendant's possession was a "firearm [that] was in and affecting commerce." (Doc. 22.) Therefore, based on the foregoing Eighth Circuit law, § 922(g)(1) satisfies the Commerce Clause. Accordingly, I recommend the district court deny the motion to dismiss.

### III. CONCLUSION

For the reasons set forth above, I respectfully recommend the District Court **deny** Defendant's Motion to Dismiss. (Doc. 32).

Objections to this Report and Recommendation in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Crim. P. 59(b) must be filed within fourteen (14) days of the service of a copy of this Report and Recommendation. Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* Fed. R. Crim. P. 59. Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**DONE AND ENTERED** at Cedar Rapids, Iowa, this 15th day of August, 2024.

Mark A. Roberts, United States Magistrate Judge
Northern District of Iowa